**FILED**

July 17, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____
MRC

DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

|  |  |
|---|---|
| **W.P.V.,** *on his own behalf and on behalf of His minor child, W.P.O.,* <br><br> Plaintiffs, <br><br> v. <br><br> **UNITED STATES OF AMERICA** <br><br> Defendant. | **EP-23-CV-00074-DCG** |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs W.P.V. and W.P.O. respectfully request that the Court deny the United States' motion to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim. As discussed below, Plaintiffs' claims are not jurisdictionally barred because the United States has waived sovereign immunity through the Federal Tort Claims Act, and Plaintiffs state claims under Texas law upon which relief may be granted. The United States has filed this same type of motion multiple times in jurisdictions around the country. For the same reason that the Western District of Texas denied a nearly identical motion in *C.M. v. United States*, No. CV-5:21-0234-JKP-ESC, 2023 WL 3261612 (W.D. Tex. May 4, 2023), this Motion should be denied.

## I.     INTRODUCTION

Plaintiffs W.P.V. and his minor son W.P.O. bring this case under the Federal Tort Claims Act, 28 U.S.C. §1346(b) *et seq*., ("FTCA"), to recover money damages for the abuse they experienced at the hands of the United States Government after crossing the U.S.-Mexican border. W.P.V. and W.P.O. were subjected to abuse and threats by agents of the Government

shortly upon their entry into the United States.  Then, while both W.P.V. and W.P.O. were in detention, they were forcibly separated from each other, and were kept separated for months without any legitimate law enforcement or child welfare purpose.  W.P.O.—who was only 4-years old at the time of the separation—was shuttled around different facilities, until being placed in an ORR facility thousands of miles away from his father, W.P.V.  Meanwhile, W.P.V. was also shuttled around different detention centers where he continued to endure abuse, and all the while being denied any contact with his young son.  In fact, W.P.V. was even removed from the country without being given the opportunity to communicate with his son, or having the option to take his son back with him.  As the allegations in the Complaint demonstrate, the Government's conduct here was unconstitutional, caused Plaintiffs significant psychological injury, and (as several courts have already held) was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Ms. L. v. U.S Immigration and Customs Enf't ("ICE")*, 310 F. Supp. 3d 1133, 1145-46 (S.D. Cal. 2018), *modified* 330 F.R.D. 284 (S.D. Cal. 2019), *and enforcement granted in part, denied in part sub nom. Ms. L. v. U.S. Immigration and Customs Enf't ("ICE")*, 415 F. Supp. 3d 980 (S.D. Cal. 2020) ("*Ms. L. I*").

The Federal Tort Claims Act (FTCA) enables Plaintiffs to recover for the injuries they experienced at the hands of the United States Government. Through the FTCA, the Government has waived its sovereign immunity from suit in circumstances where, as here, state law provides a remedy for similar conduct committed by a private person instead of the Government. In short, Plaintiffs have satisfied all the requirements to invoke the FTCA, and there are no applicable exceptions.

Indeed, over the last few years, courts across the country—including a court in this District—have addressed nearly identical motions from the Government to dismiss FTCA claims

involving the border separation policy, and rejected the sovereign immunity arguments the Government now advances. *C.M. v. United States*, No. CV-5:21-0234-JKP-ESC, 2023 WL 3261612 (W.D. Tex. May 4, 2023) ("*C.M. (Texas)*"); *C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020), *motion to certify appeal denied*, No. CV-19-05217-PHX-SRB, 2020 WL 5232560 (D. Ariz. July 6, 2020) ("*C.M. (Arizona)*"); *A.P.F. v. United States*, 492 F. Supp. 3d 989 (D. Ariz. 2020); *Nunez Euceda v. United States*, No. 220CV10793VAPGJSX, 2021 WL 4895748 (C.D. Cal. Apr. 27, 2021); *A.I.I.L. v. Sessions*, No. CV-19-00481-TUC-JCH, 2022 WL 992543 (D. Ariz. Mar. 31, 2022). These courts have found that the "discretionary function" exception does not bar Plaintiffs' claims because the challenged conduct violated the U.S. Constitution and there is no "element of judgment or choice" or "public policy consideration[]" in doing so. They have also found that the "due care exception" does not apply, since family separations were conducted pursuant to executive policy, and no statute or regulation mandated the Government's actions.

Finally, Plaintiffs have pled all the elements of claims for intentional infliction of emotional distress and negligence under Texas law, and a "private person analogue" to the Government's conduct does exist: abuse committed against nursing home residents. In Texas, private nursing homes are liable for torts like negligence and intentional infliction of emotional distress arising out of their mistreatment of persons committed to their care.

For at least these reasons and for the reasons explained below, the Government's motion to dismiss Plaintiffs' Complaint should be denied.

## II.     FACTUAL BACKGROUND

### A.     The Government's Policy on Forcible Separation of Families

This is a case about the U.S. Government's policy to forcibly separate families at the border with the intent of causing trauma to those families from that separation. This policy,

instituted by the U.S. Government under the Trump administration, separated more than 3,800 children from their parents after they crossed the U.S.-Mexico border. Compl. at ¶ 5. The purpose of this executive policy ("Family Separation Policy") was to use the trauma resulting from family separations and media reporting of that trauma to deter future immigrants and asylum-seekers. *Id.* at ¶ 4.  This Family Separation Policy violated the Constitution and statutory and common law. *Id.* at ¶ 9.

The Government always knew its Family Separation Policy would cause harm. *See* Compl. at ¶¶ 29–39. Prompted by controversy over the Department of Homeland Security (DHS)'s policies and practices relating to family separations, DHS established an Advisory Committee that studied family separations.  That committee issued a warning in 2016 that "separation of families for purposes of immigration enforcement or management, or detention is never in the best interest of children.  *Id.* at ¶ 39.  Former Deputy Director of the Office for Refugee Resettlement ("ORR") for the Unaccompanied Alien Children's ("UAC") Program Commander Jonathan White also repeatedly warned the Government that a Family Separation Policy would likely harm children, including "significant potential for traumatic psychological injury to the child."  *Id*.  The American Academy of Pediatrics (AAP) publicly opposed the Family Separation Policy and warned about the "trauma" that would result from family separations.  *Id.*

Undeterred, or perhaps encouraged, the Government began its policy of Family Separations.  The Government established a pilot in El Paso, through which it targeted for criminal prosecution parents who crossed the border with children and forcibly separated any such families.  *Id.* at ¶ 30. The government separated 281 individuals in families between July and November 2017 through this initiative. *Id.* After that, Attorney General Jeff Sessions

announced that the government would institute a "Zero Tolerance" policy.  *Id.* at ¶ 35. The Zero Tolerance policy mandated the prosecution of all persons who crossed the United States border between ports of entry, thereby extending to the entire southern border the practices of criminal prosecution and family separation previously tested in the El Paso pilot program. *Id.* at¶ 36. Consistent with these announcements, the Government promptly began separating families along the entire border. *Id.* at ¶ 37.

The specific intention of the Government in creating, piloting, and broadening the Family Separation Policy was to cause severe trauma and harm to ultimately deter families from migrating to the United States. *See id.* ¶¶ 42-43. For example, after the pilot program in El Paso ended, senior officials in the Department of Justice and DHS issued a memorandum titled "Policy Options to Respond to Border Surge of Illegal Immigration." *Id.*  That memorandum stated that the separations and criminal prosecutions would "have a substantial deterrent effect." *Id.* at ¶ 39.  On May 11, 2018, John Kelly, President Trump's then-Chief of Staff, stated on NPR that "a big name of the game is deterrence . . . . It could be a tough deterrent—would be a tough deterrent." *Id* ¶ 42. When the interviewer asked about whether it was "cruel and heartless" to take a parent away from their children, he replied, "[t]he children will be taken care of—put into foster care or whatever." *Id.* On June 18, 2018, when Attorney General Sessions was asked about the inhumane policy, he stated: "hopefully people will get the message and come through the border at the port of entry and not break across the border unlawfully."  And on June 19, 2018, Steve Wagner, Assistant Secretary of HHS said, "[w]e expect that the new policy will result in a deterrence effect . . . ." *Id.*

**B.      The Government Deployed its Cruel and Inhumane Policy to Separate Plaintiffs WPV and WPO**

Plaintiff W.P.V. is a father from Honduras who crossed the United States-Mexico border with his then four-year-old child W.P.O. in May 2018 near El Paso, Texas.  Compl. at ¶¶ 46, 51, 52.  They fled their unsafe home country of Honduras in search of safety in the United States. *See id.* at ¶¶ 46-49. Their journey was long and arduous.  *Id.* Most of their belongings stolen along the way and W.P.O. become sick during the trip and soiled his clothes.  *Id.* at ¶ 50. At the border, W.P.V. and W.P.O. voluntarily approached and surrendered themselves to a group of officers in accordance with their plan from the outset. *Id.* at ¶ 52.

W.P.O. still suffered from illness at that time, and despite multiple requests, was provided inadequate medical attention.  *Id.* at ¶ 53.  W.P.V. was repeatedly subjected to racial insults from the officers, including during his initial interview at the local U.S. Customs and Border Protection ("CBP") office, where the officers called him a "thief," a "criminal," and accused him of entering the U.S. to commit crimes and swore at him. *Id.* at ¶¶ 54-57.

W.P.V. and W.P.O. were initially detained together in a holding center that was so cold that detainees called it the "*hielera*" ("icebox," in Spanish). *Id.* at ¶ 59. The *hielera* lacked windows or natural light and contained only hard surfaces—in violation of the CBP's own internal policies and standards. *Id.; see Id.* at 16 n. 29. W.P.V. and W.P.O. were denied access to water and W.P.O. received no medicine or clothing for hours after multiple requests. *Id.* ¶¶ 62, 64-65.

W.P.V. was removed from the *hielera* while W.P.O. was sleeping in his arms. *Id.* at ¶¶ 66-67. From that point, W.P.V. was transferred to multiple detention facilities and was not provided any information about W.P.O. despite multiple requests. *See id.* at ¶ 69-79. Only when W.P.V. contacted his brother months after his separation from W.P.O. did he learn that W.P.O.

had been released from custody. *See id.*  At no point during their detention were W.P.V. and W.P.O. able to speak with each other. *Id.* at ¶ 76. The Government never made an effort to reunite W.P.O. with W.P.V. or even his extended family for over a month; rather, W.P.O. was placed in the custody of a foster family. *Id.* at ¶ 94.

Plaintiffs filed suit against the Government and against Cayuga Home for Children, Inc., d/b/a Cayuga Centers and the United States in the Southern District of New York on May 18, 2021. Plaintiffs' suit against the United States is premised on the Federal Tort Claims Act. *Id.* at ¶ 9. They allege causes of action for intentional infliction of emotional distress and negligence. *See id.* at ¶¶ 133-141. Plaintiffs have settled their claims against Cayuga Centers.

## III.    LEGAL STANDARDS

### A.    Dismissal for lack of subject matter jurisdiction

Defendant first moves to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  On a motion to dismiss, the "complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) ("[T]his suggestion that the Court should dissect the complaint and examine every single allegation seriatim is misguided."). Evaluation of a complaint upon a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Plaintiffs' causes of action arise under the FTCA. While the Government is generally immune from liability absent its consent, the FTCA provides that consent "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." (quoting 28 U.S.C. § 1346(b)(1)).  The FTCA's waiver of sovereign immunity contains a number of exceptions. When construing an

exception a court should "identify 'those circumstances which are within the words and reason of the exception'" *Joiner v. United States,* 955 F.3d 399, 404 (5th Cir. 2020)(quoting Kosak v. United States, 465 U.S. 848, 853 n.9 (1984). "'[U]nduly generous interpretations of the exceptions [to the FTCA] run the risk of defeating the central purpose' of the FTCA." *Id.*(internal quotations omitted). The Court "do[es] not construe exceptions to the FTCA in favor of any particular party." *Id.*

On a 12(b)(6) motion to dismiss, "[t]he court must accept 'all well-pleaded facts in the complaint as true and viewed in the light most favorable to the plaintiff.'" *Cobos v. Bluefin Water Sols., LLC*, No. 21-CV-00072-DC-DF, 2022 WL 847235, at *2 (W.D. Tex. Mar. 22, 2022) (quoting *Raj*, 714 F.3d at 327) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## B.   Dismissal for failure to state a claim.

Defendant also moves to dismiss for failure to state a claim pursuant to Rule 12(b)(6). In considering motions to dismiss pursuant to Rule 12(b)(6), courts must accept all well-pleaded allegations as true and must construe all well-pleaded facts in the light most favorable to the plaintiff. *See, e.g., Cullum v. Siemens*, No. SA–12–CV–49–DAE, 2013 WL 5781203, at *1 (W.D. Tex. Oct. 25, 2013); *Cobos v. Bluefin Water Sols., LLC*, No. 21-CV-00072-DC-DF, 2022 WL 847235, at *2 (W.D. Tex. Mar. 22, 2022). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

IV.     **ARGUMENT**

A.      **Plaintiffs' claims are not barred for lack of subject matter jurisdiction.**

The FTCA has waived the Government's sovereign immunity for actions plausibly alleged in the Plaintiffs' complaint, thus allowing this Court to exercise subject matter jurisdiction over Plaintiffs' claims.

1.      **Plaintiffs' claims are not barred by the FTCA's discretionary function exception.**

The Government argues that its actions at issue here are protected by the discretionary function exception ("DFE"), which bars claims that (1) "involve an element of judgment or choice," and (2) are "based on considerations of public policy." *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991). As shown below, neither the decisions to separate W.P.V. and W.P.O. as a part of the prosecution and detention of W.P.V. under the Zero-Tolerance Policy, nor the conditions in which the Government confined both W.P.V. and W.P.O. following their apprehension were discretionary in nature.

(a)     *The DFE does not bar claims directed towards W.P.V. and W.P.O.'s separation because that separation violated the constitution*

Plaintiffs allege that the Governments actions violated the Constitution and the DFE does not shield the Government from claims arising from its unconstitutional actions. *See Limone v. United States*, 579 F.3d 79, 101 (1st Cir. 2009) ("It is elementary that the discretionary function exception does not immunize the government from liability for actions proscribed by federal statute or regulation. Nor does it shield conduct that transgresses the Constitution.") (internal citations omitted); *see also Raz v. United States*, 343 F.3d 945, 948 (8th Cir. 2003) ("We must also conclude that the FBI's alleged surveillance activities fall outside the FTCA's discretionary-function exception because [plaintiff] alleged they were conducted in violation of his First and

9

Fourth Amendment rights."); *Medina v. United States*, 259 F.3d 220, 225 (4th Cir. 2001) (noting that the starting point of the discretionary function exception analysis is that "federal officials do not possess discretion to violate constitutional rights or federal statutes") (quoting *U.S. Fid. & Guar. Co. v. United States*, 837 F.2d 116, 120 (3d Cir. 1988)); *Nurse v. United States*, 226 F.3d 996, 1002 & n.2 (9th Cir. 2000) ("governmental conduct cannot be discretionary if it violates a legal mandate," including violating the Constitution); *Prisco v. Talty*, 993 F.2d 21, 26 n. 14 (3d Cir.1993) (concluding that the discretionary function exception was inapplicable to an FTCA claim based on conduct that violated plaintiff's constitutional rights); *Loumiet v. United States*, 828 F.3d 935, 944 (D.C. Cir. 2016) ("Although the discretionary-function exception shields government policymakers' lawful discretion to set social, economic, and political policy priorities from judicial second-guessing via tort law, there is no blanket exception for discretion that exceeds constitutional bounds."); *Myers & Myers, Inc. v. U. S. Postal Serv.*, 527 F.2d 1252, 1261 (2d Cir. 1975)(" It is, of course, a tautology that a federal official cannot have discretion to behave unconstitutionally or outside the scope of his delegated authority.").

The same is true here.  Defendants' motions ignores mountains of contrary authority and fails to mention that Defendants have lost this same argument almost every time they previously raised it, including on nearly identical facts in this District.  *C.M. (Texas)*, 2023 WL 3261612.

       (i)  The Government's separation of family violated the constitution

The heart of Plaintiffs' claims result from the Government's forcible separation of W.P.V. from W.P.O. and the resulting harm from that separation. Under the Due Process Clause of the Fifth Amendment, "[n]o person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Fifth Amendment "applies only to the federal government," which explains the need for "the Fourteenth Amendment—to ensure that the states

too may not 'deprive any person of life, liberty, or property, without due process of law.'"

*Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 243 (5th Cir. 2022) (Ho, J.,

concurring) (quoting U.S. Const. amend. XIV). Given the undeniable "textual parallel between

the Fifth and Fourteenth Amendments" courts "understandably construe[] 'due process of law' to

mean the same thing under the Fifth and Fourteenth Amendments alike." *Id*. Thus, when

applying due process caselaw, it does not matter whether the caselaw arises in the context of the

Fifth or Fourteenth Amendment.

The Supreme Court has "recognized on numerous occasions that the relationship between

parent and child is constitutionally protected." *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978)

(citing cases). A parents' right to "care, custody, and control of their children" is "perhaps the

oldest of the fundamental liberty interests recognized by [it]." *Troxel v. Granville*, 530 U.S. 57,

65 (2000) (plurality opinion). The Fifth Circuit's position on this issue aligns with that of the

Supreme Court, noting that "[t]he rights to conceive and to raise one's children have been

deemed essential, basic civil rights of man, and rights far more precious than property rights."

*Romero v. Brown*, 937 F.3d 514, 519 (5th Cir. 2019) (quoting *Stanley v. Illinois*, 405 U.S. 645,

651 (1972)).

This District has also come to the same conclusion. After analyzing cases from the

Supreme Court, the Fifth Circuit and other district courts, this District concluded: "Under the

circumstances alleged here, Plaintiffs have alleged sufficient facts of a plausible substantive due

process violation. Absent a justifiable reason for the separation, Plaintiffs have plausibly alleged

egregious and outrageous conduct to keep a father separated from his seven-year old son." *C.M.*

*(Texas)*, 2023 WL 3261612, at *40.

The facts of this case demonstrate similar "egregious" and "outrageous" conduct that rises to the level of a substantive due process violation.  The government's policy of separating children from their parents in the absence of a determination that the parents were unfit or presented a danger to their children, and its failure to track the children and promptly reunite the families once they were separated violated the constitutional right to family integrity of the persons subject to the policy, including Plaintiffs. Compl at ¶ 131. As explained in Sections II.A and II.B above, Plaintiffs W.P.V. and his then-four-year-old son, W.P.O., in their quest for asylum in the United States, encountered substantial mistreatment from immigration officers both during their initial apprehension and eventual detention.  Compl. at ¶¶ 46-94. And, despite a months-long separation, the Government thereafter failed to even attempt any reunification effort. *Id.* The Government does not offer any plausible justification for its forced separation. The concerns of egregious conduct are further amplified here as compared to the recent *C.M. (Texas)* case given that the Government's conduct in forcibly separating and unjustifiably keeping apart a ***four-year-old*** boy from his father.

Thus, Plaintiffs' procedural due process rights were also violated by the Government's actions. The Due Process Clause "requires that the state follow certain procedures before encroaching on these parental rights . . . . A child cannot be removed 'without a court order or exigent circumstances.'" *Romero*, 937 F.3d at 521.  Even if the Government may have had grounds to keep parents separated from their children during their sentences under 8 U.S.C. § 1325, there was no grounds to continue that separation afterwards. *Ms. L. v. U.S. Immigration & Customs Enf't*, 302 F. Supp. 3d 1149, 1164 (S.D. Cal. 2018) (noting that Ms. C., who served a 25-day sentence under 8 U.S.C. § 1325, was on "equal footing" with Ms. L. for pursuing her due process claim, which was based on "the continued separation from her child."). Indeed, the

12

Government has provided no explanation, nor demonstrated any process, for W.P.V. and W.P.O.'s separation. As the Court in *J.S.R. by & through J.S.G.* recognized, the Government's continued separation of the plaintiffs' family lacked "a compelling reason for depriving the children of their family integrity—depriving them of their primary and only consistent source of support." 330 F. Supp. 3d at 741–42. Nor did the Government show that "its [separation] policy was narrowly tailored to achieve that compelling reason." *Id.* The Government never attained a specific court order regarding the separation of W.P.V. and W.P.O. At no time did the Government conduct any hearing regarding W.P.V.'s fitness as a parent or whether he posed any risk to W.P.O. The decision to keep them separated stemmed from the executive branch's directive to punish asylum seekers like W.P.V. and W.P.O. and deter any future immigrants seeking asylum in the United States.

(ii)     The DFE does not apply to constitutional violations

The DFE does not shield the Government from claims arising from its unconstitutional conduct. The Supreme Court made its intention on this issue clear. *Sutton v. United States*, 819 F.2d 1289, 1293 (1987) ("[W]e have not hesitated to conclude that such action does not fall within the discretionary function [exception] when governmental agents exceed the scope of their authority as designated by statute or the Constitution."). While the Fifth Circuit has not directly addressed this issue, district courts in the Fifth Circuit have found that the DFE does not shield violations of the Constitution. *Spotts v. United States*, 613 F.3d 559, 569 (5th. Cir. 2010) ("This court has not yet determined whether a constitutional violation, as opposed to a statutory, regulatory, or policy violation, precludes the application of the discretionary function exception."); *McElroy v. United States*, 861 F. Supp. 585, 593 (W.D. Tex. 1994) ("[I]f a specific and intelligible constitutional mandate exists that is related to the alleged torts of the government agency, the Court will conclude that such action occurred during the performance of a function

13

divested of discretion. In such an instance, therefore, the discretionary function exception will be inapplicable.").

On this basis, courts have found that the Government's family separation policy likely violated the Constitution and that well-pleaded complaints will survive a motion to dismiss. *C.M. (Texas)*, 2023 WL 3261612, at \*27 ("Indeed, the Western District of Texas has recently 'joined many district courts around the country that have found forced family separations in comparable circumstances likely unconstitutional'") (citing *D.A. v. United States*, No. EP-22-CV-00295-FM, 2023 WL 2619167, at \*10 (W.D. Tex. Mar. 23, 2023)); *Ms. L. v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 1133, 1145 (S.D. Cal. 2018) ("This practice of separating class members from their minor children, and failing to reunify class members with those children, without any showing the parent is unfit or presents a danger to the child is sufficient to find Plaintiffs have a likelihood of success on their due process claim."); *Jacinto-Castanon de Nolasco v. U.S. Immigr. & Customs Enf't*, 319 F. Supp. 3d 491, 499 (D.D.C. 2018) ("[T]he Court easily concludes that Ms. Jacinto-Castanon and her sons are likely to succeed on at least one of their claims – namely their substantive due process claim that their continued separation, absent a determination that Ms. Jacinto-Castanon is either an unfit parent or presents a danger to her sons, violates their right to family integrity under the Fifth Amendment"); *J.S.R. by & through J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 741 (D. Conn. 2018) ("The Government has not challenged the California Order, and the parties agree that a constitutional violation occurred when the Government separated children from their parents—both on the basis of substantive due process, as the separation deprived the children of their right to family integrity, and procedural due process, as J.S.R. and V.F.B. were given no notice and no fair opportunity for a hearing before being separated from their parents.").

Despite the fact that the Government knew of these cases prior to filing its brief, it addresses none of them.  The Government instead cites *Butz v. Economou,* 438 U.S. 478 (1978) for its position "that the DFE would apply even if alleged conduct might later be held unconstitutional," Mot. at 22-23, but a court in this District has held the cited language to be non-binding:

> [I]n the context of discussing absolute versus qualified immunity with respect to constitutional violations by federal employees, the Supreme Court stated: *"Moreover, no compensation would be available from the Government, for the Tort Claims Act prohibits recovery for injuries stemming from discretionary acts, even when that discretion has been abused."* . . . . *The Court finds the statement in Butz to be non-binding dictum.*

*C.M. (Texas)*, 2023 WL 3261612, at *27 (emphasis added).

           (iii)    Because family separations are unconstitutional, DFE does not apply

Numerous courts have considered whether the DFE covers the Government's unconstitutional conduct of forced family separation, and have found that the DFE does not shield such conduct under similar circumstances. *C.M. (Arizona)*, 2020 WL 1698191, *4 ("Plaintiffs have plausibly alleged that the government's separation of their families violated their constitutional rights, which is not shielded by the discretionary function exception."); *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996 (D. Ariz. 2020) (same); *Nunez Euceda v. United States*, No. 2:20-cv-10793-VAP-GJSx, 2021 WL 4895748, at *3 (C.D. Cal May 4, 2021) (same); *A.I.I.L. v. Sessions*, No. CV-19-00481-TUC-JCH, 2022 WL 992543, at *4 (D. Ariz. Mar. 31, 2022) ("Plaintiffs have plausibly alleged that the government's conduct violated their constitutional rights," even if "some Plaintiff-Parents had a criminal history which the government could properly consider.").

Indeed, a court in this District recently reached similar conclusions in a similar case: "[T]he duty to comply with the United States Constitution may remove discretion from federal

actors and thus render the discretionary function exception inapplicable. With that in mind, the Court must determine if and when a plausible constitutional violation occurred on the facts of [the] case." *C.M. (Texas)*, 2023 WL 3261612, at *31. In *C.M. (Texas)*, the Plaintiffs, a father and son from Honduras seeking asylum in the U.S., brought multiple claims against the Government under the FTCA after their apprehension by immigration agents at the border. *Id.* at 18-20. Like the Plaintiffs here, the *C.M. (Texas)* plaintiffs were verbally abused by these agents, were detained in subpar conditions in a *hielera*, and were kept thousands of miles apart for months before any reunification efforts by the Government. *Id.* The *C.M. (Texas)* court held that the plaintiffs there had "stated enough facts to state a plausible violation of this [Fifth Amendment] constitutional duty [to not deprive any person of life, liberty, or property without due process of law.]" *Id.* at 75. Specifically, there, the court held that the Government's forced and prolonged separation of the plaintiffs plausibly alleged a violation of their constitutional rights to survive the Government's motion to dismiss for lack of subject matter jurisdiction.  *Id.* at 76-78.  In support of this holding, the court reasoned that Government agents' actions concerning one's constitutional rights are nondiscretionary, and those actions may not be shielded by the discretionary function exception. *Id.*  On similarly pled facts, the same result is warranted here.

The Government's motion ignores precedent from this DistrictThe Government's arguments attempting to color the prolonged separation of W.P.V. and W.P.O. as subject to its discretion is flawed for at least the reasons articulated in the recent decision from this District. *See C.M. (Texas)*, 2023 WL 3261612. Specifically, the Government argues that "the timing of W.P.O.'s release from ORR custody resulted from discretionary decisions regarding the health and safety of children in the government's custody," citing 8 U.S.C. § 1232(c)(3)(A) as the basis for the decision. *See* Mot. at 18. In the recent *C.M.* case from this District, the court stated "that

reliance does not explain why the Government could not house [the plaintiff father] in a facility that permitted reunification with his son" after the plaintiff's sentence was complete and he was awaiting removal. 2023 WL 3261612, at *40. In furtherance of that statement, the court reasoned that the *C.M. (Texas)* Plaintiffs "plausibly allege that, once the [plaintiff father] served his twenty-five-day sentence it was egregious and outrageous to keep him separated from his son without any justifiable reason." *Id.* There, the Government attempted—without any success—to justify the separation citing 8 U.S.C. § 1225(b)(1)(B)(ii) & (iii)(IV) as the basis for the plaintiff father's mandatory detention in the same way it attempted to justify W.P.V.'s detention. *See id.*; *see also* Mot. at 3. Even the government claims that any of its actions regarding the prosecution of W.P.V. and his subsequent detention were discretionary in nature per the "Zero-Tolerance Policy" stand refuted for the reasons articulated by the *C.M. (Texas)* court:

> *Plaintiffs have presented claims that arose directly from the Family Separation Policy (including the Zero-Tolerance Policy) – even though the Government had not yet formally published such policy in written form. And, at least arguably, that Zero-Tolerance Policy removed the prosecutorial discretion with respect to charges levied against C.M. See C.D.A. v. United States, No. CV 21-469, 2023 WL 2666064, at *14 (E.D. Pa. Mar. 28, 2023) (rejecting government's "argument that prosecutorial discretion still existed under the zero-tolerance policy"). If the Court were to find that the Zero-Tolerance Policy mandated C.M.'s prosecution, then the discretionary function exception would not shield even that decision. See id.*

*C.M. (Texas)*, 2023 WL 3261612, at *43. In that case, the court held that "[n]othing about the [plaintiff father's] conviction or sentence justified the continued separation" once the father's sentence was served, finding "plausible constitutional violations for the post-sentence time-period. *Id.* Similarly, W.P.V. was sentenced to time-served, but the Government never attempted any reunification measures.

The Government's argument that the separation was lawful, alluding to *Ms. L* ("parents and children may lawfully be separated when the parent is placed in criminal custody"), is also

misplaced in the current case. *See* Mot. at 25. The Government repeats its same mistake from the *C.M. (Texas)* case, mischaracterizing the Plaintiffs' claims as challenging the prosecutorial and detention decisions, instead of the decision to separate the Plaintiffs against their will and subsequently keep them separated without justification.

* * *

In sum, to hold that the DFE applies, the Court would need to conclude—at this early stage of the case, when the Court must accept Plaintiffs' allegations as true and draw all reasonable inferences in their favor—either that the Government's separation of the Plaintiff family was constitutional or that the DFE applies notwithstanding the likely unconstitutionality of that conduct. The uniform weight of authority—*C.M. (Arizona), C.M. (Texas)*, *A.P.F.*, *Nunez Escueda*, and *A.I.I.L.*—remains that allegations of this type plausibly allege a constitutional violation. Thus, consistent with this authority, Plaintiffs submits that their similar-pled factual allegations establish that the Government's egregious and intentional conduct violates the Constitution and therefore the Government cannot now avail itself of DFE to shield such unconstitutional conduct.

> (b)  *Plaintiffs challenge the Government's policy of forcible and prolonged separation without justification—not the Government's prosecution and detention and of WPV.*

The Government mischaracterizes Plaintiffs' claim by arguing that Plaintiffs challenge the Government's efforts to prosecute W.P.V. and detain him pending resolution of immigration proceedings. Mot. at 13-19. But Plaintiffs are not challenging this general conduct. Nor are they challenging the Government's general duties under the TVPRA to transfer unaccompanied minors to the ORR. *See id.* Rather, Plaintiffs challenge their forcible and prolonged separation without justification, the practice of which the Government has previously acknowledged as a

"human tragedy."  Plaintiffs' Opp. to United States Mot. to Dismiss at 24, *C.M. v. United States*, SA-21-CV-00234 (W.D. Tex. Apr. 22, 2022), Dkt. No. 24.  This distinction is critical.

While it is not inherently unconstitutional to enforce criminal laws, it was unconstitutional to forcibly separate Plaintiffs for months without justification or process. Indeed, every Court that has considered this issue has denied the Government's motion to dismiss on the grounds that similar separations were likely unconstitutional. *See A.P.F.*, 492 F. Supp. 3d at 996*; C.M. (Arizona)*, 2020 WL 1698191, at *4*; Nunez Euceda v. United States*, 2021 WL 4895748, at *3 ("Indeed, courts within this circuit have held that the government's practice of separating families, and the procedures used to implement this practice, likely violated due process.") (internal quotations omitted); *A.I.I.L.*, 2022 WL 992543, at *4.  It is these violations of due process that are at issue here, and the Government's violations of Plaintiffs' rights are unconstitutional.

> **2.   Plaintiffs' claims relating to the decision to transfer W.P.O. to the custody of ORR do not fall under the FTCA's exception for actions taken while reasonably executing the law.**

The Government's argument that "[where] a government employee's actions are authorized by statute or regulation . . . the claim must be dismissed for lack of subject matter jurisdiction" likewise stands rejected by this District's recent decision in *C.M. (Texas).* There, the court held that the due care exception did not waive sovereign immunity by the FTCA. *C.M. (Texas)*, 2023 WL 3261612, at *23. The same should apply here because the Government failed to exercise due care in its actions resulting from the designation of W.P.O. as an unaccompanied minor per 8 U.S.C. § 1232(b).

The due care exception "exempt[s] actions mandated by statute or regulation . . . . only if the actor has exercised due care." *Buchanan v. United States*, 915 F.2d 969, 970-71 (5th Cir. 1990). The court applies the *Welch* test in claims similar to those of Plaintiffs here: if a specific

course of action is prescribed by a statute or regulation, the inquiry turns on whether the officer

acted with due care in following the statute or regulation's mandate. *See C.M. (Texas)*, 2023 WL

3261612, at *20 (citing *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005)). Within the

meaning of the FTCA, due care involves "concern for the rights of others." *Hatahley v. United

States*, 351 U.S. 173, 181 (1956).

The Government argues that the due care exception applies when the accused conduct is

"authorized by statute or regulation" (as opposed to being mandated by statute or regulation).

Mot. at 31. But that is not the relevant test. As the Fifth Circuit has noted, the due care exception

applies where the actions are "mandated by statute or regulation." *Buchanan v. United States*,

915 F.2d 969, 970-71 (5th Cir. 1990); *see also Nunez Euceda*, 2021 WL 4895748, at *4 (stating,

en route to denying motion to dismiss FTCA/family-separation claim, that "[t]he [DCE] applies

if a statute or regulation 'specifically pr[e]scribes a course of action. . . .'"); *C.M. (Arizona)*,

2020 WL 5232560, at *4 (assessing prevalence of Welch's test and declining to certify denial of

motion to dismiss for appeal); *A.P.F.*, 492 F. Supp. 3d at 995–96.

The cases the Government cites do not justify departing from this settled law. For

example, in *Bub Davis Packing Co., Inc. v. United States*, 443 F. Supp. 589, 593 (W.D. Tex.

1977), *aff'd*, 584 F.2d 116 (5th Cir. 1978), the district court did not address whether the

Government's actions must merely be "authorized" by statute or regulation. Likewise, the Fifth

Circuit in *Porter v. United States*, 473 F.2d 1329, 1337 (5th Cir. 1973), did not discuss the

applicable standard, and instead assumed, absent any "allegation that the damage [done to

property] was due to negligence," that the FBI agents had "properly" carried out their duties.[1]

---

[1] The out-of-circuit cases that the Government cites are also deficient. For example, *FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.* did not address the due care exception and instead

No statutory or regulatory provision that expressly authorized the Government to separate Plaintiffs in the circumstances alleged in the Complaint. And the Government does not identify any. After reciting the DCE standard, the Government uses a single sentence to identify the statute purportedly at issue: 8 U.S.C. § 1232(b)(3), which requires, subject to exceptions, that the Government transfer *unaccompanied* immigrant children from DHS to ORR custody within "72 hours [of] determining that such child is an *unaccompanied* alien child." Mot. at 27 (emphasis added). That provision does not address—let alone authorize—the forcible, prolonged family separation of accompanied minors described and challenged in the Complaint.

Even if the Government's actions were part of its execution of a statute or regulation, for the due care exception to apply, the Government must show its officers/agents actually exercised due care where executing such a statute or regulation. The Government has not even attempted to argue that its forcible and prolonged separation of the Plaintiffs was done with due care. And Plaintiffs have alleged ample facts showing that the Government failed to operate with due care. Indeed, the Government's actions highlight that the welfare of W.P.O. came second to a decision to prosecute W.P.V. for misdemeanor unlawful entry, which stands in direct contravention of the key guiding principle identified by another court in this District:  that "[w]hen dealing with

---

considered "whether the [FTCA] . . . withdrew the sue-and-be-sued liability of FDIC under 12 U.S.C. § 1819 torts not covered by that Act." 592 F.2d 364, 365 (7th Cir. 1979). *Sickman v. United States* addressed the DCE, but does not opine on the appropriate test for determining when it applies. 184 F.2d 616, 619 (7th Cir. 1950). The same is true of *Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155, 1160 (1st Cir. 1987). And as *C.M.* explains, *Borquez v. United States*, 773 F.2d 1050, 1053 (9th Cir. 1985) did not hold that the DCE encompasses any governmental conduct that was "authorized" by a statute or regulation. 2020 WL 1698191, at *3. Instead, and at most, it creates a narrow exception to *Welch* and held that the DCE applies when a single statutory or regulatory provision expressly authorizes the exact tortious conduct challenged by a FTCA claim. In other words, *Borquez*'s holding only comes into play if adjudicating a FTCA claim would require the court to rule on the legality of a statutory or regulatory provision.

minors, the best interests of the minor are of paramount importance." *C.M. (Texas)*, 2023 WL
3261612, at *22. W.P.V., after serving his sentence housed apart from his son, received no
reunification effort from the Government during the processing of his asylum application. This
chain of events parallels that of *C.M. (Texas)*, where the court found that "[the] alleged series of
events [was] enough to advance claims outside the realm of the due care exception." *Id.* at *23.
Similarly here, the Government failed to exercise due care in its separation of, and subsequent
lack of reunification effort for W.P.V. and W.P.O.

### 3. Plaintiffs have satisfied the private person analogue requirement.

The Government also argues that it is immune from suit because there is "no private
person analogue" to the conduct alleged in this case. Mot. at 27-29. A private analogue need only
exist under "like circumstances," not "under the same circumstances." *Indian Towing Co. v.
United States*, 350 U.S. 61, 64 (1955); *see also United States v. Olson*, 546 U.S. 43, 46 (2005).
The Government argues that "[b]ecause only the federal government has the authority to enforce
federal criminal and immigration laws and make determinations concerning detention, there is no
private person analogue that would support a claim under the FTCA." Mot. at 28.  This is
incorrect.

As a threshold matter, and as found in *D.A.*, this argument "misses the point" because
"Plaintiffs are not challenging [the Government's] authority to enforce federal law but rather the
forced separation of their family." 2023 WL 2619167, at *10. Additionally, as another court in
this District has determined, the Government's argument is not persuasive because it is better "to
focus on the behavior involved, not the legal labels applied, and then look for analogies with
private conduct." *C.M. (Texas)*, 2023 WL 3261612, at *19 (quoting *Fuentes-Ortega v. United
States*, No. CV-22-00449-PHX-DGC, 2022 WL 16924223, at *4 (D. Ariz. Nov. 14, 2022)
(quoting *Arvanis v. Noslo Eng'g Consultants, Inc.*, 739 F.2d 1287, 1290 (7th Cir. 1984))).

Indeed, the private person analogue here is at least as clear as in the case cited by the Government, *United States v. Olson*, 546 U.S. 43 (2005). In *Olson*, injured miners sued the Mine Safety and Health Administration (MSHA) pursuant to the Federal Tort Claims Act (FTCA), alleging negligence by federal mine inspectors. The Supreme Court rejected the Ninth Circuit's determination that no private analogue existed for negligent actions by mine inspectors, finding that the scope of inquiry undertaken by the lower courts was too narrow:

> As this Court said in Indian Towing, the words "'like circumstances'" do not restrict a court's inquiry to the same circumstances, but require it to look further afield. 350 U.S., at 64, 76 S.Ct. 122; see also S.Rep. No. 1400, 79th Cong., 2d Sess., 32 (1946) (purpose of FTCA was to make the tort liability of the United States "the same as that of a private person under like circumstance, in accordance with the local law").

*Id.* at 46–47. Indeed, in *Olson*, the Government conceded that "similar 'good Samaritan' analogies exist for the conduct at issue . . . namely, "private persons who conduct safety inspections." *Id.* at 47.

The private person analog here is at least as clear as in *Olson* in that the conduct here involved affirmative conduct against custodial victims that created the alleged harm. Unsurprisingly, courts have rejected the Government's argument there is no private person analogue to the separation of families by immigration authorities.

For example, in *C.M. (Arizona)*, another case involving the prolonged separation of a minor child from his parent by immigration officials, the Court considered and rejected the precise argument the Government advances here. There, the court found that immigration officials, like nursing home employees, "are tasked with the care and custody of those they detain, and owe detainees at least a minimal level of care." *Id.* at *2 (citing *Estate of Smith v. Shartle*, No. CV-18-00323-TUC-RCC, 2020 WL 1158552, at *1 (D. Ariz. Mar. 10, 2020)) (finding private analogue for Bureau of Prisons officials whose placement of a prisoner in a

23

certain cell was negligent; "like a nursing facility employee, a BOP employee is tasked with the care of persons who are dependent upon them to make daily housing and safety determinations. Like nursing care employees, BOP has a duty to ensure the safety of the persons who reside at the facility"). Indeed, nursing home personnel in Texas are tasked with the care of persons in their custody. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Convalescent Services, Inc.*, 193 F.3d 340 (5th Cir. 1999) (describing tort verdict against nursing home by injured patient). Similarly, BOP personnel have a duty to care for those in their custodial care and thus, Plaintiffs have satisfied the private person analogue in the present case. Indeed, courts in this District and beyond have held that in such circumstances—analogizing the duty of care owed by immigration officials with the duty of care owed by private nursing home personnel—demonstrates a sufficient private person analog. *See C.M. (Arizona)*, 2020 WL 1698191, at *2; *C.M. (Texas)*, 2023 WL 3261612, at *20.

Moreover, as the *C.M. (Texas)* court in this district recognized, Texas has long recognized "that a father has a tort cause of action when someone entices away or harbors his minor child." *Silcott v. Oglesby*, 721 S.W.2d 290, 292 (Tex. 1986) (citing *Gulf C. & S.F. Ry. Co. v. Redeker*, 2 S.W. 527, 528 (Tex. 1886)). This presents yet another private analog based on Texas law under similar facts as are at issue in the present case. Indeed, the Supreme Court has consistently recognized that there may be a private person analog even when "uniquely governmental functions" are at issue. *See Olson*, 546 U.S. at 46 (relying on *Rayonier Inc. v. United States*, 352 U.S. 315, 318-19 (1957); *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955)). In *Olson*, furthermore, the Supreme Court reaffirmed that the words, "like circumstances," as used in 28 U.S.C. § 2674, "do not restrict a court's inquiry to the same circumstances."

24

Further still, the cases cited by the Government are readily distinguishable because they involved challenges to the Government's decision not to take enforcement action or grant a benefit; none of them, however, involved affirmative conduct in the nature of physically separating children from parents and holding them separately without reasonable justification. *See, e.g., Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) (challenging denial of immigration status adjustment); *Sea Air Shuttle Corp v. United States*, 112 F.3d 532, 537 (1st Cir. 1997) (challenging failure of the FAA to take regulatory enforcement action); *Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir. 2019) (challenging withdrawal of immigration benefits); *Mazur v. U.S. I.N.S.*, 957 F. Supp. 1041 (N.D. Ill. 1997) (challenging failure to process application before visa lottery program ended). Further still, another case cited by the Government, *Ryan v. U.S. Immigration & Customs Enf't*, 974 F.3d 9 (1st Cir. 2020) does not even address the private person analog requirement.

For these reasons, the private person analog requirement poses no bar to Plaintiffs' FTCA claims.

## B. Plaintiffs have stated claims under state law.

### 1. Plaintiffs have sufficiently stated a claim of intentional infliction of emotional distress.

Like Arizona and forty-five other states, Texas has adopted the Restatement (Second) of Torts formulation of the tort of intentional infliction of emotional distress. *See Twyman v. Twyman*, 855 S.W.2d 619, 622–23 (Tex. 1993) (citing *Savage v. Boies*, 77 Ariz. 355 (Ariz. 1954)) [. As recited in the Restatement, the elements of intentional infliction of emotional distress are: 1) the defendant acted intentionally or recklessly, 2) the conduct was extreme and outrageous, 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the emotional distress suffered by the plaintiff was severe. Restatement (Second) of Torts § 46(1).

Under the Restatement, a claim for intentional infliction of emotional distress under the FTCA is sufficient where the agents' actions were motivated by malice. Restatement (Second) of Torts, § 46; *Martinez v. United States*, 2018 WL 3359562, at *10–12 (D. Ariz. July 10, 2018) (citing *Gasho v. United States*, 39 F.3d 1420, 1434 (9th Cir. 1994) (recognizing viability of an IIED claim brought under the FTCA simply where [federal] agents' actions were motivated by malice.). Texas courts, including the Western District of Texas, have allowed intentional infliction of emotional distress claims to proceed where the underlying wrong involved the intentional interference and/or destruction of a family relationship. *See, e.g., Fulton v. Bed Bath & Beyond, Inc.*, 2006 WL 8436984 at *3 (N.D. Texas Oct. 30, 2006) (denying motion to dismiss IIED claim based on individual's encouragement of husband to divorce spouse); *C.M. (Texas)*, 2023 WL 3261612, at *47 (based on factual allegations that are similar to those at issue in the present case, finding that "Plaintiffs have alleged enough facts to plausibly state a claim of intentional infliction of emotional distress that survives the instant motion to dismiss").

Here, Plaintiffs were subjected to verbal abuse shortly after entering the United States and voluntarily submitting themselves to agents of the Government.  Compl. at ¶¶51-55.  As part of their ensuing detention, they were initially housed in freezing conditions without proper clothing or protection. *Id*. at ¶¶ 59-65. Plaintiff W.P.O. was not provided any care or change of clothes despite being visibly sick and despite requests for medical attention.  *Id*. at ¶¶56.  This abuse was then followed by a forced and lengthy separation of a very young child from his parent with no legitimate law enforcement or public safety purpose, during which no contact was permitted. *Id*. at ¶¶ 67-101. The malicious purpose of this inhumane conduct was to deter other Central Americans from seeking asylum or other immigration relief in the United States. The

Government took these actions for the purpose of intentionally inflicting emotional distress on the thousands of parents and children they separated, including Plaintiffs. *Id*. at ¶¶ 102-132.

Courts, including in the Western District of Texas, addressing FTCA claims arising out of family separations under the prior Administration's family separation policy have rejected the precise arguments the United States makes here. For example, in *C.M. (Texas)*, this District held:

> The Court has no difficulty in finding that, under the totality of the circumstances, Plaintiffs have alleged enough facts to plausibly state a claim of intentional infliction of emotional distress that survives the instant motion to dismiss. Among other things, they have alleged that they were housed in a cold environment without adequate clothing or protection, subjected to verbal and physical abuse, fed lies about what would happen during their separation, and separated without contact. See Compl. ¶¶ 34-61. They have alleged that they have suffered severe emotional distress from the intentional conduct of the Government. Id. ¶ 79. The Court will not belabor this point. It instead denies the motion on this claim essentially for the reasons stated by Plaintiffs in their response. See Resp. at 36-38.

*C.M. (Texas)*, 2023 WL 3261612 at *47. Similarly, a district court in Arizona held that the same conduct alleged here plausibly demonstrates a sufficiently pled IIED claim (under the standard laid out in the Restatement (second):

> Here, the FAC alleges that the government's enforcement of the family separation policy was motivated by malice (See FAC ¶¶ 15, 69, 79, 89, 104, 114–16, 120, 125–30, 168, 171–72, 242–58), and rooted in prejudice against aliens crossing the border from Central America (See FAC ¶ 9 ("Defendants destroyed families to inflict severe pain on Central American immigrants, hoping that this would cause them to abandon their asylum cases and deter other Central Americans from seeking asylum or other immigration relief in the United States. They took these actions for the purpose of intentionally inflicting emotional distress on the thousands of parents and children they separated, including Plaintiffs.").) Moreover, a jury could find the government's conduct extreme and outrageous and that such emotional distress resulted from the government's conduct. Accordingly, the FAC plausibly alleges an IIED claim.

*A.I.I.L.*, 2022 WL 992543 at *7; *Ms. L. I.*, 310 F.Supp. 3d at 1145 (finding the alleged practices "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience'). The conduct alleged in this case mirrors and is predicated on substantially the same wrongdoing

as the IIED claims in *Ms. L.*, *I.I.I.L. v. Sessions*, and *C.M. v. United States*. For the same reasons, the United States' request to dismiss Plaintiffs' IIED claims should be denied.

### 2.    Plaintiffs have sufficiently stated a claim of negligence.

To state a negligence claim, Plaintiffs must show that, under circumstances similar to those alleged in this case, Texas law would "make a 'private person' liable [for negligence]." *Olson*, 546 U.S. at 44 (quoting 28 § 1346(b)(1)); *see* 28 U.S.C. § 2674 (the United States may be liable in tort "in the same manner and to the same extent as a private individual under like circumstances"). Under Texas common law, "a negligence cause of action consists of: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach." *Firestone Steel Products Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996).

Here, Plaintiffs have sufficiently pled all the elements of negligence. The United States argues that Plaintiffs have not identified any duty under Texas law "to keep them unified during [the] time" when W.P.V. "attempted to enter the United States by eluding inspection and detained pending his removal." Mot. at 33.  As a threshold matter, the Complaint demonstrates that W.P.V. did not "elude[] inspection" and on the contrary, sought immediate inspection upon entry.  *See* Compl. at ¶ 52.  Moreover, the government contends that it owes no duty to keep the Plaintiffs united during the time when W.P.V. was "prosecuted and detained pending his removal."  Mot. at 33.  The duty, however, is not of family unification.[2]  Rather, as well

---

[2] For at least this reason, the cases the Government cites regarding Plaintiffs' alleged failure to identify a duty under Texas law to keep parent and child unified are inapposite. Mot. at 33; *see Rathod v. Barr*, No. 1:20-CV-161-P, 2020 WL 1492790, at *3 (W.D. La. Mar. 5, 2020), report and recommendation adopted, No. 1:20-CV-161-P, 2020 WL 1501891 (W.D. La. Mar. 25, 2020) (denying habeas petition and emergency petition for temporary restraining order for jurisdictional reasons and because petitioner could not show that he has been in custody in excess of the presumptively reasonable six-month period and there is no significant likelihood of

recognized by Texas, the duty owed is one that private persons owe to individuals in their custodial care. *See, e.g., Harris v. Harris County Hosp. Dist.*, 557 S.W.2d 353, 355 (Tex. Civ. App.—Houston [1st Dist.] 1977, no writ) ("It [is] the duty of the hospital to provide for the care and protection of its patients, and in the exercise of this duty the hospital [is] required to provide such reasonable care as the patient's known condition require[s]"); *St. Paul Fire and Marine Ins. Co.*, 193 F.3d at 341 (describing negligence verdict against nursing home for injuries sustained by nursing home resident); *cf. Browning v. Graves*, 152 S.W.2d 515 (Tex.Civ.App.—Fort Worth 1941) (citing *King v. Brown*, 100 Tex. 109, 94 S.W. 328, 330 (1906)) (recognizing jailer has duty to "care for and protect his prisoners from harm").[3]

Plaintiffs allege that the United States breached this duty of care to Plaintiffs by prolonging their separation and for failing to protect W.P.O. from abuse at the facilities where he was housed, and that such breach proximately caused their injuries. Compl. at ¶¶ 137-141. These allegations are sufficient to survive a motion to dismiss under Rule 12(b)(6) as to Plaintiffs' negligence claim. Indeed, on similarly pled allegations, another court in this District has found that a negligence claim was adequately pled and has refused to dismiss a claim sounding in negligence. *See C.M. (Texas)*, 2023 WL 3261612, at *47.

---

removal in the reasonably foreseeable future); *see also Davis v. Carlson*, 837 F.2d 1318, 1319 (5th Cir. 1988) (denying request to order Bureau of Prisons to transfer prisoner to a facility near his wife's residence).

[3] State laws limiting the liability of state and local governments for the tortious conduct of their employees do not apply to FTCA claims brought by persons held in federal custody, since the FTCA holds the Government liable for the actions of its agents as if they were private persons. *United States v. Muniz*, 374 U.S. 150, 164–65 (1963). Thus, while this Court looks to Texas common law to determine the elements of the negligence claim, any immunities that would be provided to state actors under the Texas Tort Claims Act ("TTCA") are inapplicable.

## V.       CONCLUSION

For the reasons set forth above, Plaintiffs request that the United States' motion to

dismiss be denied.


 Dated: July 14, 2023                              Respectfully submitted,

                                                  FISH & RICHARDSON P.C.

                                                  */s/ Aamir A. Kazi*
                                                  Aamir A. Kazi (admitted *pro hac vice*)
                                                  GA Bar No. 104325
                                                  Email:  kazi@fr.com
                                                  Karan Jhurani
                                                  GA Bar No. 290326
                                                  Email: jhurani@fr.com
                                                  1180 Peachtree Street, 21st Floor
                                                  Atlanta, GA 30309
                                                  Telephone: (404) 892-5005
                                                  Facsimile: (404) 892-5002

                                                  Caitlin M. Dean (admitted *pro hac vice*)
                                                  TX Bar No. 24109797
                                                  Email: cdean@fr.com
                                                  Fish & Richardson P.C.
                                                  7 Times Square, 20th floor
                                                  New York, NY 10036
                                                  Telephone: (212) 765-5070
                                                  Facsimile: (212) 258-2291

                                                  Benjamin C. Elacqua
                                                  TX Bar No. 24055443
                                                  Email: elacqua@fr.com
                                                  Fish & Richardson P.C.
                                                  909 Fannin St., Ste. 2100
                                                  Houston, TX 77010
                                                  Telephone: (713) 654-5300
                                                  Facsimile: (713) 652-0109

                                                  *Attorneys for Plaintiffs*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 14, 2023, a true and correct copy of the

foregoing document was filed with the Clerk of the Court using the Court's CM/ECF system,

which will send notification of such filing to all counsel of record.

Dated July 14, 2023                          */s/ Aamir A. Kazi*